IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAMAR NELSON DOUGLAS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 11-350 |
| | ) | |
| v. | ) | District Judge David S. Cercone |
| | ) | Magistrate Judge Cynthia Reed Eddy |
| IRMA VIHIDAL, Correctional Health | ) | |
| Care Administrator; *ET AL.*, | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I. RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that the Motion to Dismiss filed by Defendants Hice and Jin (ECF No. 17) be denied and that the Partial Motion to Dismiss filed by Defendants Cowan, McAnany, Rice-Grego, Vindonish and Vihidal (ECF No. 21) be denied.

**II. REPORT**

Plaintiff, Lamar Nelson Douglas, is a Pennsylvania inmate currently housed at the State Correctional Institution at Greene, located in Waynesburg, Pennsylvania. He commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, against the following Defendants employed at SCI-Greene: Irma Vihidal, Corrections Health Care Administrator (CHCA); John McAnany, Registered Nurse; Dr. Byunghak Jin, Medical Director; Mike Hice, Phlebotomist; Peter Vidonish, Unit Manager; Cowan, Unit Manager; Burris, Correctional Counselor; and Nedra Rice-Grego, Registered Nurse Supervisor.

The Amended Complaint contains five numbered counts as follows: 1) an Eighth Amendment Deliberate Indifference to Serious Medical Needs claim against Vidonish, Burris, Cowan, Vihidal, McAnany, Rice-Grego, and Jin based on Plaintiff's allegation that these

1

defendants failed to provide him with a "Z-code" (single cell); 2) a claim pursuant to the Equal Protection Clause and the Americans with Disabilities Act against Vidonish, Burris, Cowan, Vihidal, McAnany, Rice-Grego, and Jin; 3) an Eighth Amendment Deliberate Indifference to Serious Medical Needs claim against Jin, Hice, and Vihidal, alleging that Plaintiff's rights were violated when, after hitting his head, he spent five days without treatment before being sent to an outside specialist, and that his glasses were confiscated and he was not given any pain medication; 4) an Eighth Amendment claim alleging that Jin and Vihidal violated a duty of care to Plaintiff to ensure that he not be transferred to a facility in Michigan; and 5) a First Amendment retaliation claim against Vihidal, Jin, and Cowan alleging that they retaliatory authorized Plaintiff's transfer to Muskegon Correctional Facility in Michigan in retaliation for grievances Plaintiff filed against them.

A. Standard of Review

Presently pending are motions to dismiss filed by Defendants Hice and Jin (the medical defendants) (ECF No. 17) and Defendants Cowan, McAnany, Rice-Grego, Vidonish, and Vihidal (ECF No. 21). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In deciding this motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional

12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. *See also* Ashcroft v. Iqbal, 556 U.S. 662 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id*. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis 372 F.3d 218, 223 (3d Cir. 2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the *pro se* litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir.2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247–48 (3d Cir.1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently

alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688).

B. Plaintiff's Allegations

In his Amended Complaint, Plaintiff avers the following. Dr. Patel, an ophthalmologist examined Douglas at SCI-Graterford on May 10, 2000 and recommended that Plaintiff be placed in medical Z-code housing (single cell) because of complete blindness in Plaintiff's left eye and visual impairment of his right eye. Thereafter, Douglas was placed in a single cell.

When he was transferred to SCI-Greene, however, officials there refused to grant him Z-code status. Plaintiff filed a series of grievances and inmate requests to staff members related to his housing status, all of which were denied. Consequently, he was housed with another prisoner in a double stacked bunk bed. As a result, he continuously hits his head on the ladder which is connected to the top and bottom bunk, as well as the slab of metal that's above the bottom bunk and wrapped around the top bunk. Further, because of Plaintiff's blindness, he accidently bumps into his cell mate and his cell mate's belongings, which creates an atmosphere of hostility towards Plaintiff.

On August 25, 2009, Plaintiff requested the removal of the ladder from his cell because he kept hitting his head on it when he attempted to exit the bunk. Defendant Vidonish responded on August 26, 2009, asking Plaintiff to submit ADA justifying paperwork. Plaintiff replied by informing Plaintiff that the paperwork already was within the custody of the Pennsylvania Department of Corrections (DOC). Defendant Vidonish responded back on August 28, 2009, stating: "Our medical department does not have anything for you indicating you fall under the DC-ADM 006 for a qualified disability."

On September 11, 2009, Plaintiff was celled with another prisoner. Upon awakening from sleep, Plaintiff rose to use the bathroom and hit his head on the ladder which is connected to both the top and bottom bunk. When Plaintiff stood, he started to get dizzy so he sat down on the edge of the bottom bunk. In doing so, he hit his head on the lip of the top bunk which hangs down about 2 1/2 inches. Plaintiff laid back down until count time. When he awoke, his head was throbbing and his right eye was sore. He administered his prescription eye drops and Tylenol. Plaintiff then went to the library. By this time, Plaintiff could only see from the top right corner of his right eye. He was placed in a wheelchair and wheeled to the Medical Department where he was met by Mike Rice and John McAnany. Douglas claims that Rice and McAnany asked questions in a hostile and aggressive manner. Dr. Jin then arrived and examined Douglas' eyes and performed tests. Hice and the other medical staff acted very hostile and aggressive towards Plaintiff until Dr. Jin appeared. Plaintiff attributes this aggressiveness to retaliation for the September 2, 2009 grievance against Vihidal, Hice's supervisor. Plaintiff specifically informed Hice and Jin of the collision with the ladder connected to both bunks. Defendants did not perform a cat scan or xrays as there was no sign of lumps, gashes or blood to indicate severe injury to plaintiff's head.

Plaintiff subsequently was escorted to an inpatient room where he sat in pain wondering and waiting to find out what was going to happen. Defendant Hice burst into the room in a threatening and aggressive manner accompanied by C/O Smlth and began yelling and screaming in Plaintiff's face. Defendant Hice then confiscated plaintiff's eye glasses, subjecting plaintiff further pain and suffering as plaintiff was forced to place more strain on his eyes. Plaintiff was left in the inpatient room without medical treatment, eye glasses, and in pain from September 11, 2009 through September 15, 2009.

On September 15, 2009, Plaintiff was taken to Regional Eye Association where he was seen by Eye Specialist Dr. Mayle. Dr. Mayle determined that Plaintiff's right eye retina was detached in three places and recommended emergency eye surgery. Thereafter, Plaintiff was returned to SCI-Greene to await the decision of the medical department. Subsequently, Plaintiff was taken to UPMC Pittsburgh Hospital where Dr. Ellis performed retinal repair surgery. Part of the surgery required filling the inside of the right eye with oil. Dr. Ellis told Plaintiff that the oil must be removed in six months time in order to facilitate the reattachment of the retina.

On February 19, 2010, Plaintiff was transferred to the state of Michigan due to his filing grievances. As a result of this transfer, Plaintiff was prevented from having his six month surgery to remove the oil from his eyeball. On April 16, 2010, Plaintiff submitted an inmate request to Major Winfield inquiring about the name of the committee and its members who approved Plaintiff's transfer. Pursuant to the memo that was issued to inmates in general population, no inmate who suffered from a serious medical or mental health problem was not eligible to be transferred. Plaintiff was still in recovery from a serious eye surgery when he was transferred without his medical eye drops.

Plaintiff' claims in the Amended Complaint are as follows. Count 1: The failure of Defendants Vidonish, Burris, Cowan, Vihidal, McAnany, Rice-Grego, and Jin, to reassign Plaintiff to a medical Z Code single cell constitutes deliberate indifference under the Eighth Amendment. Count 2: Defendants Vidonish, Burris, Cowan, Vihidal, McAnany, Rice-Grego, and Jin violated Plaintiff's rights under the Equal Protection Clause and the Americans with Disabilities Act (ADA) by treating Plaintiff differently than similarly situated individuals with less serous disabilities who have been granted medical Z Code single cell status. Count 3: Defendants Hice, Jin and Vihidal allowing Plaintiff to languish in an inpatient room without care

6

for five days constitutes deliberate indifference. Count 4: Defendants Vihidal and Jin breached their duty of care owed to Plaintiff by failing to ensure that Muskegon Correctional Facility had the necessary medical treatment programs and staff for the continued treatment of Plaintiff's visual handicap, including the necessary removal of oil from Plaintiff's cornea. Count 5: Defendants Vihidal, Jin and Cowen authorized Plaintiff's transfer to Muskegon in retaliation for Plaintiff filing grievances.

### C. Liability under 42 U.S.C. § 1983

Plaintiff's Complaint seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207. In the prison setting, where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is

7

personally involved in that violation because he is confronted with a situation he can remedy directly. Carter v. Smith, Civil No. 08-279, 2009 WL 3088428, 6 (E.D. Pa. Sept. 22, 2009). *See also* Atkinson v. Taylor, 316 F.3d 257, 270 (3d Cir. 2003).

Here, Defendants move to dismiss the Amended Complaint on the basis of lack of personal involvement. However, Plaintiff makes several assertions of personal involvement by all of the Defendants. While the Court makes no determination as to ultimate liability, Plaintiff's allegations sufficiently allege personal involvement to withstand a motion to dismiss on this basis.

Moreover, health care administrators are not immune from liability; where the facts indicate personal involvement in an inmate's allegedly deficient medical treatment, courts have refused to grant summary judgment in favor of the administrator. *See, e.g.*, Sappington v. Ulrich, 868 F. Supp. 194 (E.D. Tex. 1994); Kaminsky v. Rosenblum, 737 F. Supp. 1309 (S.D.N.Y. 1990). As it is unclear from this undeveloped record whether Defendant Vihidal had any ability or authority to influence the course of medical treatment he received, or the conditions of his confinement, Plaintiff's claim against her should not be dismissed at this time and her Motion to Dismiss should be denied.

### D. Eighth Amendment

In Count 1, 3 &4, Plaintiff seeks to invoke liability under the Eighth Amendment, which provides as follows.

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This protection, enforced against the states through the

Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

The Amended Complaint purports to state a claim for deliberate indifference to serious medical needs in violation of the Eighth and Fourteenth Amendments. In order to make out a *prima facie* case that a prison official's actions violate the Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements. First, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer v. Brennan, 511 U.S. 825; Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347.

To state an Eighth Amendment violation in the context of medical treatment, an inmate must show prove two elements: 1) plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 439 U.S. 897 (1978). The first showing requires the court to objectively determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County

Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).

The second prong requires a court <u>subjectively</u> to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

Plaintiff's allegations are sufficient to state a claim upon which relief may be granted. Specifically, he claims that he is suffering from an eye condition that ultimately required surgery. Thus, Plaintiff has pleaded the existence of a serious medical condition. Moreover, Plaintiff alleges that Defendants acted with deliberate indifference. Specifically, that Defendants refused to ensure his safety by refusing to grant him single cell Z code status, left him in an inpatient room for five days without treatment, and transferred him to an out of state facility in contravention of DOC policy when he required follow up surgery and eye care. These allegations, taken as true, state a claim for relief based on inadequate medical treatment. There simply is no record for this court to determine whether Defendants violated Plaintiff's Eighth Amendment rights. Thus, the Motions to Dismiss should be denied in this regard. Accord Hughes v. Miskell, Civil No. 3:10-1443, 2010 WL 8499990, 13 (M.D. Pa. Dec. 28, 2010); Williams v. Klem, Civil No. 3:07-1044, 2008 WL 4453100, 7 (M.D. Pa. Sept. 30, 2008).

In so recommending, this Court notes that Plaintiff's burden of proving his Eighth Amendment claim is high. Plaintiff must demonstrate that the official's actions constituted "an unnecessary and wanton infliction of pain" or were "repugnant to the conscience of mankind." Gamble, 429 U.S. at 105-106. Deliberate indifference to serious medical needs of prisoners is

substantially different than negligently diagnosing or treating a medical condition. Gamble, 429 U.S. at 106. Only the former violates the Eighth Amendment, which requires "more than ordinary lack of due care for the prisoner's interests or safety." *Id*. (citing Whitley v. Albers, 475 U.S. 312, 319 (1986)). Medical malpractice may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation. Kost v. Kozakiewicz, 1 F.3d 176 185 (3d Cir. 1993).

> Although prison systems have a duty to provide prisoners with adequate medical care, it is but just that the public be required to care for the prisoner who cannot by reason of deprivation of liberty care for himself. [T]he law is clear that simple medical malpractice is insufficient to present a constitutional violation. Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners.

Durmer v. O'Carroll, 991 F.2d at 67 (quotations and citations omitted).

While an intentional refusal to provide any medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference and is actionable under the Eighth Amendment, the Eighth Amendment does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere. A disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation because the "right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." Layne v. Vinzant, 657 F.2d 468, 473 (1st Cir. 1981). Mere disagreements over medical judgment do not state Eighth Amendment claims as there are typically several acceptable ways to treat an illness. White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) (citations omitted). *Accord* Young v. Quinlan, 960 F.2d 351, 358 n.18 (3d Cir. 1992) (an inmate's disagreement with prison personnel over the exercise of medical judgment does not state claim for relief under section 1983). Thus, while Plaintiff's Complaint is sufficient to state a claim under the Eighth Amendment, his burden of proving the existence of such a violation is substantial.

D. Retaliation:  Transfer to Michigan

Plaintiff claims that Defendants retaliated against him by transferring him to a Michigan facility because he filed grievances.  It is well settled that retaliation for the exercise of a constitutionally protected right may violate the protections of the First Amendment, which is actionable under section 1983.  Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990).  However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things:  (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. See Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997).

A plaintiff can satisfy the second requirement by demonstrating that the "adverse" action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." See Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).  The third factor, "motivation," may be established by alleging a chronology of events from which retaliation plausibly may be inferred.  Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Goff v. Burton, 91 F.3d 1188 (8th Cir. 1996); Pride v. Peters, 72 F.3d 132 (Table), 1995 WL 746190 (7th Cir. 1995).  If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors.  Mt. Healthy, 429 U.S. at 287.  "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably

related to a legitimate penological interest." Rauser, 241 F.3d at 334. When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. *Id*.

A prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim. *See* Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Allah, 229 F.3d at 224; Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution). Plaintiff claims that the retaliation was the result of his filing grievances and complaints. Thus, he has alleged the first element of a retaliation claim.

With respect to the second element, the Plaintiff alleges that he was transferred to an out of state facility. The Court of Appeals for the Third Circuit has concluded that transfer to another facility is sufficiently adverse to support a retaliation claim. DeFranco v. Wolfe, 387 Fed. App'x 147, 157 (3d Cir. 2010). Thus, Plaintiff has alleged the second element of a retaliation claim. With respect to the third factor, the court does not have sufficient facts to determine whether Plaintiff has established motivation. At this stage of the litigation, given the temporal connection between the alleged claims of retaliation and the processing of his various grievances, there are enough facts set forth by Plaintiff to raise a reasonable expectation that further discovery in this case may reveal evidence of retaliatory intent. Although Plaintiff faces a substantial burden in proving his claim, his Complaint does allege sufficient facts to support a cause of action based on retaliatory transfer. As such, the motions to dismiss should be denied in this regard.

### E. Fourteenth Amendment

In Count 2 of his Amended Complaint, Plaintiff asserts a violation of his Equal Protection Rights. This claim invokes rights as protected by the Fourteenth Amendment. I The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.' " Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985)). *See also* United States v. Armstrong, 517 U.S.456 (1996) (Equal Protection Clause prohibits decision to prosecute based on an unjustifiable standard such as race, religion, or other arbitrary classification).

To state a claim under this theory, "a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." Phillips v. County of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008). Here, Plaintiff claims that he was denied Z Code status when less handicapped individuals were granted this privilege. This is sufficient to state an equal protection claim. Village of Willowbrook v. Olech, 528 U.S. 562 (2000) (holding that allegations of irrational and wholly arbitrary treatment, even without allegations of improper subjective motive, were sufficient to state a claim for relief under equal protection analysis). Accordingly, the motions to dismiss should be denied on this basis.

### F. ADA Claim

Finally, in Count II, Plaintiff raises a claim under the Americans with Disabilities Act (ADA), 42 U.S. § 12101 *et seq*. Specifically, he alleges that Defendants' failure to reinstate his single cell Z Code status after he was transferred to SCI-Greene violated the ADA. The

14

gravamen of his complaint is that he was treated differently than similarly situated prisoners or prisoners with fewer, or less serious, disabilities with no rational basis underlying the disparate treatment. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II applies to the state prisons, Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 209–10 (1998), and authorizes private lawsuits for both money damages and injunctive relief against public entities that violate its provisions. § 12133.

To succeed on a claim under Title II of the ADA, a plaintiff must establish that: (1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability. Bowers v. National Collegiate Athletic Ass'n, 475 F.3d 524, 550 (3d Cir. 2007). Under Title II, the failure of a public entity to provide disabled persons with reasonable modifications constitutes discrimination within the meaning of the Act. *See, e.g.*, Townsend v. Quasim, 328 F.3d 511, 517 (9th Cir. 2003); Muhammad v. Court of Comon Pleas of Allegheny County, Pa, Civil No. 2:09–1255, 2011 WL 4368394, 7 (W.D. Pa. Aug. 25, 2011). *See also* 28 C.F.R. § 35.130(b)(7) (requiring public entity to make "reasonable modifications in policies, practices, or procedures when modifications are necessary to avoid discrimination on the basis of disability").

Plaintiff has alleged that he has been discriminated against as a result of his disability where other prisoners with different disabilities, or no disabilities at all, are provided with single-cell rooms. Moreover, he claims that he is asserting liability against Defendants in their official

capacities for injunctive relief. Accordingly, he has alleged a violation under the ADA and the motions to dismiss should be denied as to this claim as well.

### III. CONCLUSION

Based on the discussion above, it is respectfully recommended that the Motion to Dismiss filed by Defendants Hice and Jin (ECF No. 17) be denied and that the Partial Motion to Dismiss filed by Defendants Cowan, McAnany, Rice-Grego, Vindonish and Vihidal (ECF No. 21) be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and the Local Rules, the parties are allowed fourteen (14) days from the date of service to file written objections to this report. Any party opposing the objections shall have 14 days from the date of service of the objections to respond thereto. Failure to timely file objections will constitute a waiver of any appellate rights.

/s Cynthia Reed Eddy  
Cynthia Reed Eddy  
United States Magistrate Judge

May 1, 2012

Lamar Nelson Douglas  
CJ-1576  
SCI Greene  
175 Progress Drive  
Waynesburg, PA 15370