IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAMAR NELSON DOUGLAS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | Civil Action No. 11-0350 |
| | ) | United States Magistrate Judge |
| DR. BYUNGHAK JIN, | ) | Cynthia Reed Eddy |
| Medical Director, SCI | ) | |
| GREENE, | ) | |
|     Defendant. | ) | |

**MEMORANDUM OPINION IN SUPPORT OF DENIAL OF
MOTIONS FOR SUMMARY JUDGMENT**

**I.    Introduction**

On January 17, 2014, this Court heard oral argument on two motions for summary judgment: the Motion for Summary Judgment (ECF No. 83) filed on behalf of defendant Dr. Byunghak Jin, the lone remaining defendant;[1] and Plaintiff's Motion for Summary Judgment Against Defendant Jin (ECF No. 91). Having previously reviewed the copious documentary and testimonial evidence submitted by the parties in support and in opposition to summary judgment, and after considering the cogent, well-argued positions of the parties, this Court ruled from the bench on Dr. Jin's Motion for Summary Judgment and took Plaintiff's Motion for Summary Judgment under advisement.

In denying Dr. Jin's Motion for Summary Judgment, the Court stated its reasoning on the record in open court. First, the Court rejected Dr. Jin's argument that Plaintiff had failed to exhaust his administrative remedies through the Pennsylvania Department of Corrections

---

[1] Plaintiff initially commenced this action pro se, pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, against a number of individuals employed at or under contract with the State Correctional Institute at Greene County (SCI-Greene), including Dr. Byunghak Jin, the Medical Director. On November 15, 2013, Plaintiff, now counseled, filed a Stipulation of Dismissal (ECF No. 101) of all Defendants except Dr. Jin, whose Motion for Summary Judgment was also filed on behalf of former defendant Mike Hice. Only the arguments set forth therein with regard to Dr. Jin currently concern the Court.

1

grievance procedures, finding he had filed the necessary grievances related to Dr. Jin's treatment of his right eye which were pursued through all three steps of DOC's administrative process.

On the merits of the Plaintiff's Eighth Amendment - deliberate indifference claim, the Court noted that there was no dispute that Mr. Douglas' medical condition - a detached retina – presented a serious medical need. Additionally, the Court found a genuine dispute of material fact for the finder of fact: having considered the evidence submitted in the light most favorable to the non-movant, Plaintiff adduced sufficient competent evidence upon which a reasonable jury could determine that Dr. Jin failed to follow explicit, post-operative care instructions by the retinal specialist who performed reattachment surgery on Plaintiff's right eye. The treating specialist indicated Plaintiff needed to have silicone oil that had been injected into his eye removed surgically, and Dr. Jin's failure to follow his instructions in a timely manner could reasonably be deemed deliberate indifference to Plaintiff's serious medical needs.

Plaintiff's Motion for Summary Judgment presents a closer question, and the Court indicated it needed to review certain portions of the summary judgment record before making a ruling. The Court therefore took that motion under advisement.

This Memorandum Opinion is issued in support of the ruling from the bench denying Dr. Jin's Motion for Summary Judgment. The Court will also deny Plaintiff's Motion for Summary Judgment, after reconsideration of the summary judgment record, for the reasons stated herein.

## II.    Plaintiff's Claim and Arguments for Summary Judgment

Because the Court writes only for the parties, who are quite familiar with the facts and circumstances, and because this case will soon be placed under a Pretrial Order scheduling trial for the week of March 31, 2014 (see Hearing Memo Minute Entries at (ECF Nos. 110 and 111)), the Court will not recite all of the relevant facts, but only so much of the operative facts as necessary to place the Court's rulings and analysis in context.

Distilled to its essence, Plaintiff offers record evidence to support the following: Plaintiff has been legally blind in his left eye since 1987; after Plaintiff hit his head on September 11, 2009 and complained of pain and discomfort in his right eye, Dr. Jin sent Plaintiff to Regional Eye Associates ("REA"), which made the diagnosis of retinal detachment; because Mr. Douglas's condition was too complicated for REA to perform the retinal detachment surgery, REA recommended Mr. Douglas be seen by a specialist at the University of Pittsburgh Medical Center ("UPMC") Eye and Ear Institute in Pittsburgh; on September 15, 2009, Mr. Douglas was examined by Dr. Andrew Eller, Director of Ocular Trauma Service, Retina and Vitreous Services at UPMC School of Medicine; on September 16, 2009, Dr. Eller performed retinal detachment surgery; upon Plaintiff's release, Dr. Eller issued written instructions for post-operative care, which included: "If the retina remains attached, I will remove the silicone oil in a few months."; on November 19, 2009, Dr. Eller performed follow up laser treatment, as planned, and directed that Mr. Douglas continue eye drops for pressure control, have a follow-up appointment in two to three months, and "[a]t some point in three to six months [Mr. Douglas] will require additional surgery to remove the silicone oil."

Despite having actual knowledge of Dr. Eller's instruction that the silicone oil that he injected into Mr. Douglas's eye was to be removed within three to six months from November

3

2009, Dr. Jin did not send Mr. Douglas to have the oil removed for almost one year. Instead, Dr. Jin sent Plaintiff back to REA, which had already acknowledged that they could not treat his detached retina. Dr. Jin also authorized Plaintiff's transfer to a facility in Michigan during his post-operative treatment period until that facility realized Mr. Douglas required follow up eye care and returned him to SCI-Greene. By the time Dr. Jin finally arranged for Mr. Douglas to be seen at UPMC by Dr. Eller, fourteen months after he injected the silicone oil, the silicone oil had emulsified, creating a Styrofoam-like substance inside Mr. Douglas's right eye, blinding him.

These historical facts are not in much dispute, if any, although Dr. Jin counters with substantial evidence about the medical treatment and follow up actually provided to Mr. Douglas for his serious medical need, and vigorously challenges the inference that his failure to follow the instructions for removal of the silicon oil from his right eye within three to six months amounted to deliberate indifference. Dr. Jin asserts he referred Plaintiff to REA, retinal "subspecialists," on numerous occasions following Dr. Eller's surgical procedures, and that REA's medical examinations during the relevant post-operative time frame showed that Plaintiff's ocular pressure was stable and that his retina remained attached. Thus, Dr. Jin was entitled to rely on the opinions and treatment provided by REA; rather than deliberate indifference to Plaintiff's medical needs, there is merely a difference of medical opinion as to one course of treatment over another, and Plaintiff disagrees with the course Dr. Jin chose. At most, Dr. Jin maintains, that amounts to medical malpractice, not a constitutional injury.

### III. Standards

#### A. Summary Judgment Pursuant to Federal Rule of Civil Procedure 56(a)

Rule 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).

A party claiming that a fact cannot be or is genuinely disputed must support that assertion either by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

Moreover, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. *Williams v. Bor. of West Chester*, 891 F.2d 458, 460–461 (3d Cir. 1989) (non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).

The non-moving party cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument, but must "put up or shut up." *Berckeley Inv. Group., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (quoting *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109-10 (3d Cir. 1985)). Plaintiff must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322. *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The inquiry, then, involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting *Anderson*, 477 U.S. at 251-52). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. & N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)).

## B. Deliberate Indifference

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). In the seminal *Estelle* decision, *Estelle v. Gamble*, 429 U.S. 97 (1978), the Supreme Court of the United States explained why this minimum medical care is constitutionally required:

> The Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . , against which we must evaluate penal measures. Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society . . . or which involve the unnecessary and wanton infliction of pain . . . .
>
> These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical torture or a lingering death . . . , the evils of most immediate concern to the drafters of the Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. . . . The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency . . . .

*Estelle*, 429 U.S. at 102-03 (citations and internal quotation marks omitted).

However, "every claim by a prisoner that he has not received adequate medical treatment [is not] a violation of the Eighth Amendment. . . . [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in

7

diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. . . ." *Id*. at 429 U.S. 105-06 (citations and internal quotation marks omitted).

"Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id*. at 429 U.S. 106. In order to make out a *prima facie* case that a prison official or medical provider's rendering of medical care and treatment, or failure to do so, violates the Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements: (1) plaintiff was suffering from a "serious medical need," and (2) a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. *Id.*; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

The first showing requires the court to *objectively* determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991); *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).

The second prong requires a court *subjectively* to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993). As summarized more fully by the Court of Appeals for the Third Circuit:

> This Court has concluded that the standard is met when prison officials 1) deny reasonable requests for medical treatment, and the denial

> exposes the inmate to undue suffering or the threat of tangible residual injury, 2) delay necessary medical treatment for non-medical reasons, or 3) prevent an inmate from receiving recommended treatment for serious medical needs, or deny access to a physician capable of evaluating the need for treatment. *See Monmouth v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir. 1987); *see also Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993). We have also held that prison officials who continue a course of treatment they know is painful, ineffective, or entails a substantial risk of serious harm act with deliberate indifference . . .

*Whooten v. Bussanich,* 248 F.App'x 324, 326-27 (3d Cir. 2007) (additional citations omitted) (prison officials' delay in referring Plaintiff to neurologist for cluster headaches and refusal to follow recommended treatment plan after Plaintiff eventually saw neurologist was based upon prisoner's past drug addiction, of which neurologist was unaware; the delay and denial of requested treatment presented a question of negligence, not deliberate indifference).

### IV.  Application of Standards – Analysis

The question here is whether Mr. Douglas has adduced adequate evidence upon which a reasonable jury could find that Dr. Jin acted with deliberate indifference when he failed to comply with explicit post-operative instructions by the treating retinal reattachment specialist from UPMC for removal of the silicone oil within three to six months of his follow-up surgical procedure in November 2009. This is not a close question.[2]

As recited above, the undisputed historical facts show that Dr. Eller, Director of Ocular Trauma Service, Retina and Vitreous Services at UPMC School of Medicine, performed retinal detachment surgery on Plaintiff on September 16, 2009, and gave explicit post-operative instructions that the silicone oil in Mr. Douglas's right eye needed to be removed; and following the laser procedure on November 19, 2009, Dr. Eller gave instructions that the oil needed to be removed within three to six months. Mr. Douglas did not, however, receive that procedure for more than eleven months. Dr. Jin did not follow Dr. Eller's instruction for post-operative care

---

[2] The parties do not dispute the first element of an *Estelle* claim, and agree that Mr. Douglas' detached retina was a serious medical condition which posed an urgent need for treatment.

and Mr. Douglas is now legally blind in both eyes because the silicone oil emulsified. Under *Estelle* and its progeny, these undisputed facts defeat summary judgment in favor of Dr. Jin.

Dr. Jin's main line of defense is that he in fact was monitoring Mr. Douglas' progress, and had referred him to REA on numerous occasions, and REA specialists never told him to return Plaintiff to UPMC for the silicone oil removal. Moreover, he gave Plaintiff all recommended medications and sent Plaintiff to UPMC for several follow-ups in the first few months after the surgery.

Plaintiff's response to that argument is that the *number* of doctor appointments is not dispositive; what is dispositive is the *nature* of those appointments, which were not for the purpose of following Dr. Eller's instruction to remove the oil from Mr. Douglas's eye, or even to evaluate the need to remove the oil. Mr. Douglas had other eye problems like glaucoma and cataract, but treatment for these conditions did not ameliorate the need to address the oil that would emulsify in his eye if not timely removed. Moreover, although Dr. Jin frames the question as a disagreement in medical treatment between specialists, REA never opined that the silicone oil need not be removed. Even if it had, Dr. Jin could not reasonably rely on such an opinion as REA had already communicated to Dr. Jin that Mr. Douglas's eye condition was too complicated for REA to treat, which prompted the referral to Dr. Eller in the first place.

In the *Durmer* decision, the Court of Appeals for the Third Circuit rejected the District Court's conclusion that the prison doctor's conduct in sending Mr. Durmer "to several different specialists and providing of some treatment precludes a finding of deliberate indifference. According to the [district] court, this case is simply an instance of a treating physician opting for a different course of treatment than that suggested by another physician. While this may be one reasonable reading of the record in this case, we cannot conclude that it is the only one."

10

*Durmer*, 991 F.2d at 67. Rejecting the prison doctor's defense, a defense quite similar to that of Dr. Jin, the Court of Appeals stated:

> In *Lanzaro*, we noted that deliberate indifference could exist in a variety of different circumstances, including where "'knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care'" or where "[s]hort of absolute denial . . . 'necessary medical treatment [i]s . . . delayed for non-medical reasons,'" or where "'prison authorities prevent an inmate from receiving recommended treatment.'" *Lanzaro*, 834 F.2d at 346 (citations omitted). Under the circumstances present in this case, we cannot conclude as a matter of law that Dr. O'Carroll's conduct did not run afoul of the *Lanzaro* standard. Indeed, we note that defendants rely not so much on a suggestion that the treatment provided Durmer was adequate and appropriate, but rather that if it was inappropriate, it was no more than mere negligence. However, if we assume that Durmer received inadequate medical care, Dr. O'Carroll's intent becomes critical: if the inadequate care was a result of an error in medical judgment on Dr. O'Carroll's part, Durmer's claim must fail; but, if the failure to provide adequate care in the form of physical therapy was deliberate, and motivated by non-medical factors, then Durmer has a viable claim. It is therefore important that the trier of fact hear Dr. O'Carroll's testimony in order to assess his credibility, and that Durmer's counsel be permitted to explore the doctor's motivation on cross-examination.

*Durmer*, 991 F.2d at 68-69.

The *Durmer* Court also stated that referrals for second opinions and diagnosis "is not equivalent to treatment; a defendant might be deliberately indifferent to a prisoner's specific medical needs regardless of how many doctors he sends him to for diagnosis." *Id*. at 68, n.9. *See also West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978) ("The record establishes that the operation has been performed, but it does not establish that the plaintiff is being provided with adequate post-operative treatment. . . . Deliberate indifference to serious medical needs, resulting in either a denial of recommended post-operative treatment or a denial of access to a physician capable of evaluating the need for post-operative treatment, violates the constitutional standard enunciated in *Estelle*."); *Reed v. Cameron*, 380 F.App'x 160, 162-63 (3d Cir. 2010) ("Grossly negligent behavior can also constitute deliberate indifference, as can a doctor's choice to take an 'easier

and less efficacious course of treatment' in response to a serious medical need. . . . Viewing the claims in the light most favorable to Reed, he has alleged more than mere dissatisfaction or disagreement with his medical care - he has alleged that although medical staff were aware of his deteriorating condition and debilitating pain, they had unduly delayed his already-approved surgery and, in the case of the epidural injections, prevented him from receiving the treatment altogether."); *Merritt v. Fogel*, 349 F.App'x 742, 746 (3d Cir. 2009) (prisoner with Hepatitis C raised inference of deliberate indifference where he alleged, among other things, not just that he was denied his treatment of choice, "but treatment that has been recommended by a specialist and that is called for by the Department of Corrections protocol.").

For the foregoing reasons, the Court finds adequate record evidence upon which a reasonable jury could find that Dr. Jin acted with deliberate indifference when he failed to comply with Dr. Eller's explicit post-operative instructions in November 2009 to remove the silicone oil that had been placed in Plaintiff's right eye within three to six months.

Defendant's secondary defenses need not long detain us. The argument that Plaintiff failed to properly exhaust his administrative remedies because his grievances were not specific enough to encompass the deliberate indifferent claims raised in this lawsuit is without merit. Plaintiff's Grievance #370255 filed on August 1, 2011, which was taken through all three DOC administrative steps, states that the "crux" of the grievance "is based on the delay and/or interference of medically needed eye treatment by . . . Medical Director Dr. Jin . . . [which shows that] my visual handicap and needed medical treatment are not being taken seriously . . . " with regard to treatment of his right eye in June and July of 2011, just prior to the UPMC surgery. Grievance # 370255, Plaintiff's Appendix, (ECF No. 100), Tab 12, at 88 of 128. Another grievance initially filed on July 26, 2011, continued to complain about the delay and denial of

necessary treatment for his right eye and impaired vision. Grievance # 374642, Plaintiff's Supplemental Appendix, (ECF No. 107), Tab 12, at 102 of 132. The Court finds the pro se prisoner's detailed grievances complaining about delay and denial of treatment in his right eye adequate to have preserved the deliberate indifference claim which is now before this Court.

Similarly, Dr. Jin's suggestion that Plaintiff's pro se Amended Complaint did not adequately raise the deliberate indifference claim is without merit. In recommending denial of motions to dismiss the Amended Complaint at an earlier stage of this case, this Court observed that Plaintiff's claims included an "Eighth Amendment Deliberate Indifference to Serious Medical Needs" claim against Dr. Jin and others alleging that his rights were violated when, after hitting his head, he spent five days without treatment before being sent to an outside specialist, and that his glasses were confiscated and he was not given any pain medication, and an Eighth Amendment claim alleging Dr. Jin violated a duty of care to Plaintiff to ensure that he not be transferred to a facility in Michigan during the period when he was awaiting post-operative follow-up treatment. The Court found that the following averments of the Amended Complaint were sufficient to raise an Eighth Amendment deliberate indifference claim with regard to the treatment of the retinal detachment:

> On September 11, 2009, Plaintiff was celled with another prisoner. Upon awakening from sleep, Plaintiff rose to use the bathroom and hit his head on the ladder which is connected to both the top and bottom bunk. When Plaintiff stood, he started to get dizzy so he sat down on the edge of the bottom bunk. In doing so, he hit his head on the lip of the top bunk which hangs down about 2 1/2 inches. Plaintiff laid back down until count time. When he awoke, his head was throbbing and his right eye was sore. . . .
>
> Plaintiff subsequently was escorted to an inpatient room where he sat in pain wondering and waiting to find out what was going to happen. Defendant Hice . . . confiscated plaintiff's eye glasses, subjecting plaintiff further pain and suffering as plaintiff was forced to place more strain on his eyes. Plaintiff was left in the inpatient room without medical treatment, eye glasses, and in pain from September 11, 2009 through September 15, 2009.

13

On September 15, 2009, Plaintiff was taken to Regional Eye Association where he was seen by Eye Specialist Dr. Mayle. Dr. Mayle determined that Plaintiff's right eye retina was detached in three places and recommended emergency eye surgery. Thereafter, Plaintiff was returned to SCI-Greene to await the decision of the medical department. Subsequently, Plaintiff was taken to UPMC Pittsburgh Hospital where Dr. Ellis performed retinal repair surgery. Part of the surgery required filling the inside of the right eye with oil. Dr. Ellis told Plaintiff that the oil must be removed in six months time in order to facilitate the reattachment of the retina.

On February 19, 2010, Plaintiff was transferred to the state of Michigan due to his filing grievances. As a result of this transfer, Plaintiff was prevented from having his six month surgery to remove the oil from his eyeball.

Magistrate Judge's Report And Recommendation, May 1, 2012 (ECF No. 35), at 5-6.

This impressive level of detail for a pro se litigant's complaint belies defendant's suggestion that the Amended Complaint failed to raise the precise deliberate indifference claim now before the Court with sufficient particularity to allow him to prepare a meaningful defense.

For the foregoing reasons, the Court reaffirms its denial of Dr. Jin's Motion for Summary Judgment (ECF No. 83).

As to Plaintiff's Motion for Summary Judgment, upon further reflection and review of the summary judgment record, the Court finds Plaintiff has not met his burden of proving that Dr. Jin's failure to follow Dr. Eller's post-operative instructions constituted deliberate indifference under *Estelle* and its progeny as a matter of law. Whether Dr. Jin acted with a sufficiently culpable state of mind - deliberate indifference to Plaintiff's serious medical needs – is a subjective determination, and it is not like Dr. Jin did nothing at all about Plaintiff's retinal detachment.

There is enough on the record from which a reasonable jury *could* determine Dr. Jin acted with deliberate indifference when he failed to comply with Dr. Eller's post-operative instructions, but not so much or so one-sided that it would *have* to find deliberate indifference as a matter of law. Accordingly, the Court will deny Plaintiff's Motion for Summary Judgment and will enter a separate Order to that effect.

<u>/s Cynthia Reed Eddy</u>
Cynthia Reed Eddy
United States Magistrate Judge

cc: all counsel of record