IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LAMAR NELSON DOUGLAS,      )
     Plaintiff,        )
                           )
        v.            )       Civil Action No. 11-0350
                           )       United States Magistrate Judge
DR. BYUNGHAK JIN,         )       Cynthia Reed Eddy
Medical Director, SCI        )
GREENE,              )
     Defendant.      )

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S MOTION FOR RECONSIDERATION**

**I.      Introduction**

**A.  Initial Ruling on Summary Judgment**

On January 17, 2014, this Court heard oral argument on two motions for summary judgment: the Motion for Summary Judgment (ECF No. 83) filed on behalf of defendant Dr. Byunghak Jin, the only remaining defendant; and Plaintiff's Motion for Summary Judgment Against Defendant Jin (ECF No. 91). Having previously reviewed the copious documentary and testimonial evidence submitted by the parties in support and in opposition to summary judgment, including the record of Plaintiff's various pertinent grievances filed at SCI-Greene, and after considering the cogent, well-argued positions of the parties, this Court ruled from the bench on Dr. Jin's Motion for Summary Judgment following oral argument. *See* Minute Entry (ECF No. 111) and Notes of Testimony, January 17, 2014 (ECF No. ---), at 23-25.  The Court took Plaintiff's Motion for Summary Judgment under advisement, and subsequently denied it on January 27, 2014, in its Memorandum Opinion In Support Of Denial Of Motions For Summary Judgment (ECF No. 115).

The Court's Memorandum Opinion elaborated on the ruling from the bench. On the merits, the Court discussed its finding that Plaintiff had offered adequate record evidence upon which a reasonable jury could find that Dr. Jin acted with deliberate indifference when he failed to comply with Dr. Eller's explicit post-operative instructions in November 2009 to remove the silicone oil that had been placed in Plaintiff's right eye within three to six months.

As to Dr. Jin's argument that Plaintiff's claim of deliberate indifference in this regard was barred because he failed to exhaust that claim through DOC's administrative grievance procedures, the Court stated:

> Defendant's secondary defenses need not long detain us. The argument that Plaintiff failed to properly exhaust his administrative remedies because his grievances were not specific enough to encompass the deliberate indifferent claims raised in this lawsuit is without merit. Plaintiff's Grievance #370255 filed on August 1, 2011, which was taken through all three DOC administrative steps, states that the "crux" of the grievance "is based on the delay and/or interference of medically needed eye treatment by . . . Medical Director Dr. Jin . . . [which shows that] my visual handicap and needed medical treatment are not being taken seriously . . . " with regard to treatment of his right eye in June and July of 2011, just prior to the UPMC surgery. Grievance # 370255, Plaintiff's Appendix, (ECF No. 100), Tab 12, at 88 of 128. Another grievance initially filed on July 26, 2011, continued to complain about the delay and denial of necessary treatment for his right eye and impaired vision. Grievance # 374642, Plaintiff's Supplemental Appendix, (ECF No. 107), Tab 12, at 102 of 132. The Court finds the pro se prisoner's detailed grievances complaining about delay and denial of treatment in his right eye adequate to have preserved the deliberate indifference claim which is now before this Court.

Memorandum Opinion In Support Of Denial Of Motions For Summary Judgment (ECF No. 115), at 13-14.

### B. Motion for Reconsideration

Dr. Jin filed a Motion for Reconsideration and Brief in Support (ECF Nos. 116, 117) on January 28, 2014, vigorously challenging the Court's finding that Plaintiff's claim had been adequately raised and exhausted via the DOC's three step grievance procedures. Dr. Jin asserts

that the two grievances the Court referenced above, i.e., Grievances No. 370255 and No. 374642 "dealt specifically with events that took place in June and July 2011 . . . [not] events in 2009 and 2010, the time period at issue in this lawsuit and most importantly, neither grievance was exhausted prior to either the original or Amended Complaints being" filed. Brief in Support of Motion for Reconsideration (ECF No. 117), at 1. After careful review of the motion and brief in support, Plaintiff's brief in opposition, the exhibits in support and in opposition, which include the grievance records (that were also included in the summary judgment appendices), and the original briefs, the Court will deny Defendant's Motion for Reconsideration.

## II.     Standards for Reconsideration.

The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). The moving party bears a heavy burden to demonstrate that an order should be reconsidered, and the Court will only grant such a motion if the moving party shows: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice" *Id*. (citing *North River Ins. Co. v. Cigna Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). Further, motions for reconsideration should not be entertained if they simply reargue or relitigate old matters or express disagreement with a Court's ruling. *See E.E.O.C. v. U.S. Steel Corp.*, 2012 WL 1150799, at *6-7 (W.D. Pa. 2012). "A motion for reconsideration is not properly grounded on a request that the Court simply rethink a decision it

has already made." *Douris v. Schweiker*, 229 F.Supp.2d 391, 408 (E.D.Pa. 2002) ( citing *Glendon Energy Co. v. Bor. of Glendon*, 836 F.Supp. 1109, 1122 (E.D.Pa. 1993)).

To demonstrate clear error or manifest injustice, the Supreme Court mandates a "definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Moreover, a defendant must "base its motion on arguments that were previously raised but were overlooked by the Court." *United States v. Jasin*, 292 F.Supp.2d 670, 676 (E.D.Pa. 2003). A motion for reconsideration "is not a proper vehicle to merely attempt to convince the court to rethink a decision it has already made[,]" *Colon v. Colonial Intermediate Unit 20*, 443 F.Supp.2d 659, 667 (M.D.Pa. 2006) (citations omitted) and "parties are not free to relitigate issues that the Court has already decided." *Jasin*, 292 F.Supp.2d at 676 (citations omitted). As such, a motion for reconsideration may not be used by an "unsuccessful party to rehash" arguments previously disposed of by the Court. *Keyes v. Nat'l R.R. Passenger Corp.,* 766 F.Supp. 277, 280 (E.D.Pa. 1991).

### III.     Application of Standards and Discussion of Law

### A.  Defendant has not shown manifest injustice or clear error of law

For the reasons set forth on the record in open court, Notes of Testimony, January 17, 2014 (ECF No. ---), at 23, in the  Memorandum Opinion In Support Of Denial Of Motions For Summary Judgment (ECF No. 115), at 12-13, and as further elaborated below, defendant raises no facts or legal argument that the Court has not previously considered, nor does his motion for reconsideration lead this Court to the "definite and firm conviction that a mistake has been committed." The Court rejects defendant's argument, therefore, that it's finding and ruling that

Plaintiff has adequately exhausted his claim through the DOC grievance process constitutes a manifest error of law or fact. The motion for reconsideration must be denied on this basis.

### B. Plaintiff's compliance with the DOC's Grievance Procedure was substantial

The Court quoted above the brief discussion from its Memorandum Opinion In Support Of Denial Of Motions For Summary Judgment of Plaintiff's Grievances which were taken through the final appeal. In light of defendant's motion for reconsideration, it is appropriate to flesh out these Grievances. It is also appropriate to discuss several additional grievances which, although not fully grieved through all three steps, provide context for his subsequent grievances and inform the Court's judgment that Plaintiff was complaining about the pain and discomfort in his eyes and Dr. Jin's delays and deliberate indifference with regard to his vision and eyesight since April 2009.

Grievance No. 370255, Plaintiff's Supplemental Appendix, Tab 12 (ECF No. 107), at 82 to 95, filed on August 1, 2011, states, inter alia, that the "CRUX" of the grievance "is based on the delay and/or interference of medically needed eye treatment by . . . Medical Director Dr. Jin . . . [which shows that] my visual handicap and needed medical treatment are not being taken seriously . . . " with regard to treatment of his right eye in June and July of 2011. Plaintiff complains that Dr. Jin and the medical staff were not following the directions of the "UPMC Eye Care Dept for my glaucoma." The grievance was primarily directed at treatment (or lack of treatment) in June and July of 2011 with regard to his glaucoma and the pressure in his right eye, and the recommended medication and laser procedure, to be sure. However, the grievance also complains more broadly that the "delay and/or interference [by Dr. Jin and the medical staff] is clear evidence that my visual handicap and needed medical treatment are not being taken

seriously." I am having pain within my right eye and vision is being hindered due to the high pressure . . . can/will result in permanent damage and/or permanent blindness if not tended to as soon as possible." The grievance sought immediate recommended treatment and monetary compensation for his pain and suffering caused by the unnecessary delay and interference in proper care and treatment.

Chief Grievance Officer Donna Varner issued the Final Appeal Decision indicating officials at SCI-Greene had reviewed all of Plaintiff's medical records regarding the medical care provided by the medical department "regarding the treatment of glaucoma" The decision was that no "evidence of neglect or deliberate indifference has been found." *Id*., at 82. The Facility Manager's Appeal Response also indicated that the UPMC medical records of eye surgery on 7/29/11 had been reviewed. *Id*. at 86. The Initial Review Response found that Plaintiff's claims that Dr. Jin was 'intentionally delaying or interfering with your treatment is false," and indicated that the UPMC medical records had been reviewed. *Id*. at 89.

Grievance No. 374642, Plaintiff's Supplemental Appendix, Tab 12 (ECF No. 107), at 102 of 132, initially filed on July 26, 2011, continued to complain about Dr. Jin's delay and indifference to the continuing pain and visual impairments in his eyes, and with failure to provide the recommended eyeglass prescriptions "impairing further my current visual handicap." The Final Appeal Decision on this grievance again found, from examination of Plaintiff's medical records of his eye care, "[n]o evidence of neglect or deliberate indifference . . . ." Defendant points out this grievance was not adequately exhausted because it was not finally grieved until after Plaintiff had filed his initial and amended complaints in this case.

There were also a series of grievances not taken through all three steps, and therefore not exhausted. In Grievance No. 313779, which was filed in April 2010, at the time when the

silicone oil was emulsifying in his eye, Plaintiff requests recommended replacement corrective lenses, believing that this was continuing to cause him pain and discomfort. Plaintiff's Supplemental Appendix, Tab 12 (ECF No. 107), at 96-100.  He grieves that the corrective lenses provided by the DOC "are impairing further my current visual handicap," and that due to the "continuation of [his] suffering," he seeks to "have this matter resolved before extended damage(s) is done to my sight," and asks that his UPMC eye care records be examined to verify his deteriorating condition and the recommended treatment. He also notes that he only recently received the correct medical records.

In Grievance No. 287128, *id*. at 108, filed on September 2, 2009, Plaintiff complains about the medical department's failure to follow the recommended lens corrections. In Grievance No. 298313, *id*. at 109, filed on November 30, 2009, Plaintiff complains of loss of vision and eye strain. This grievance was prepared by another inmate because Plaintiff was "still experiencing visual problems."

Grievances Nos. 370255 and 374642 should not be viewed in a vacuum, but rather, as part of a continuing series of grievances where he complained about Dr. Jin's continued delays and indifference to his medical eye care needs, pain and visual impairments, as evaluated by outside medical professionals. Some of Plaintiff's grievances were filed before and shortly after his UPMC procedure in September 2009.

### C.  Plaintiff fully exhausted the claim pending before the Court

In *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004), the Court of Appeals for the Third Circuit reversed the decision of the United States District Court for the Middle District of Pennsylvania which had dismissed claims of deliberate indifference against a prison physician's

assistant, Brian Brown, for Plaintiff's failure to exhaust the DOC grievance procedures. Mr.

Spruill alleged that, as a result of the deliberate indifference of the defendants, including P.A.

Brown, "his serious back condition was left untreated, or was inadequately treated, resulting in

excruciating pain and susceptibility to other injuries." *Id*. at 222. The District Court held that Mr.

Spruill had failed to exhaust his claim against Brown because the grievances did not specifically

name Brown.

Speaking for the Court of Appeals, Judge Becker observed that, while the Prison

Litigation Reform Act of 1995, Pub.L. No. 104–134, 110 Stat. 1321 at 66 (1996), 42 U.S.C. §

1997e(a), required a prisoner to proceed through all steps of the prison's grievance process, "a

prison grievance system's procedural requirements must not be imposed in a way that offends the

Federal Constitution or the federal policy embodied in § 1997e(a)." *Id*. at 232. Thus, *Spruill* held

that "the policy of § 1997e(a) is that 'compliance with the administrative remedy scheme will be

satisfactory if it is substantial.'" *Id*. (quoting *Nyhuis v. Reno*, 204 F.3d 65, 77–78 (3d Cir.

2000)).  In rejecting Defendant Brown's argument that he had failed to exhaust the grievance

procedures because he did not identify Brown by name, the Court of Appeals for the Third

Circuit concluded:

> the prison grievance officer's recognition that Brown was involved in
> the events that Spruill complained of excused any procedural defects in
> Spruill's initial grievances. *Spruill's grievances and suit are not about specific
> instances of insulting treatment by Brown* – there would be no constitutional
> violation there anyway. Rather, *the grievances and the suit are about a larger-
> scale denial of adequate medical care*, in which prison officials clearly knew
> Brown was alleged to be implicated. Thus we reject the District Court's
> dismissal of Spruill's suit against Brown on these grounds.

*Id*. at 234-35 (emphasis added).

Similarly, in *Jackson v. Ivens*, 244 Fed.App'x. 508 (3d Cir. 2007), the Court of Appeals

for the Third Circuit reversed the District Court's grant of summary judgment for a physician

and a health services company for Plaintiff's failure to satisfy the exhaustion requirements of the Prison Litigation Reform Act. The Court of Appeals found that the prisoner's grievances were sufficiently related to his civil rights claims against the medical care providers over Defendants' objection that the grievances were unrelated to any delay in the performance of surgery that was the crux of the inmate's section 1983 suit. The Court of Appeals stated that, as "long as there is a shared factual basis between the two, perfect overlap between the grievance and a complaint is *not required by the PLRA*." *Id*. at 513 (citations omitted; emphasis added).

So too in this case, Mr. Douglas' civil rights claim and his grievances are about a "larger-scale denial of adequate medical care." Under all of the circumstances, the Court quite agrees with Plaintiff's assessment of the nature of Mr. Douglas' constitutional claim for deliberate indifference with regard to Dr. Jin's care and treatment of his eyes and vision and the administrative grievances he filed with regard thereto.

Plaintiff's medical condition was a continuing issue, not one that occurred on a specific date, and the emulsification of silicone oil was a gradual process. Dr. Jin's failure to follow Dr. Eller's explicit after care instructions was also of a continuing nature. Furthermore, Mr. Douglas, a layman, did not have the education or training to be able to pinpoint the exact cause of his pain and deteriorating vision or accurately diagnose its etiology. Mr. Douglas made repeated complaints to prison medical staff and officials, both before and after September 2009, about his pain, deteriorating vision, and the delay and indifference to his treating UPMC physician's recommendations for necessary follow up care. Given Mr. Douglas' lack of expertise, his compliance with the DOC grievance procedures was substantial and certainly adequate to have exhausted his administrative remedies within the letter and spirit of the Prison Litigation Reform Act.

For the foregoing reasons, **IT IS HEREBY ORDERED, this 28th day of February, 2014**, that Defendant Jin's Motion for Reconsideration (ECF No. 116) is **DENIED**.


/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge


cc: all counsel of record