IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAMAR NELSON DOUGLAS,<br>    Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | Civil Action No. 11-0350<br>United States Magistrate Judge |
| DR. BYUNGHAK JIN,<br>Medical Director, SCI<br>GREENE,<br>    Defendant. | )<br>)<br>)<br>)<br>) | Cynthia Reed Eddy |

**MEMORANDUM ORDER ON
MOTIONS IN LIMINE**

Plaintiff, Lamar Nelson Douglas, is a Pennsylvania inmate housed at the State Correctional Institution at Greene, located in Waynesburg, Pennsylvania. He commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, against a number of Pennsylvania Department of Corrections officials and medical care providers at SCI-Greene, including a claim against its Medical Director, Dr. Byunghak Jin, the sole remaining defendant, for deliberate indifference to his medical needs in violation of the Eighth Amendment.

Before the Court are several Motions in Limine filed by Mr. Douglas, and several filed by Dr. Jin. The Court will address each Motion in order of filing. To place the motions in limine in proper context and set the framework for evaluating the motions, a plaintiff establishes a claim of deliberate indifference as follows.

To state a constitutional violation in the context of denial of necessary medical treatment, an inmate must prove two things: (1) plaintiff was suffering from a "serious medical need," and (2) prison officials were deliberately indifferent to the serious medical need. *Estelle v. Gamble*, 427 U.S. 97, 107 (1976). The first showing requires the court to determine whether the medical

1

need was, *objectively,* "sufficiently serious."[1] The second prong requires a court to determine whether the officials acted with a sufficiently culpable state of mind, a *subjective* inquiry. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993).

> As summarized more fully by the Court of Appeals for the Third Circuit:
>
> > This Court has concluded that the standard is met when prison officials 1) deny reasonable requests for medical treatment, and the denial exposes the inmate to undue suffering or the threat of tangible residual injury, 2) delay necessary medical treatment for non-medical reasons, or 3) prevent an inmate from receiving recommended treatment for serious medical needs, or deny access to a physician capable of evaluating the need for treatment. . . . We have also held that prison officials who continue a course of treatment they know is painful, ineffective, or entails a substantial risk of serious harm act with deliberate indifference . . .

*Whooten v. Bussanich,* 248 F.App'x 324, 326-27 (3d Cir. 2007) (citations omitted) (prison officials' delay in referring plaintiff to neurologist for cluster headaches and refusal to follow recommended treatment plan after plaintiff eventually saw neurologist was based upon prisoner's past drug addiction, of which neurologist was unaware; the delay and denial of requested treatment presented a question of negligence, not deliberate indifference).

**Defendant's Motion in Limine to Preclude Punitive Damages (ECF No. 135)**

Dr. Jin argues that there is no evidence upon which a jury could find the sort of egregious conduct or a sufficiently culpable state of mind that would expose him to punitive damages. The United States Supreme Court has explained the standard for punitive damages in a civil rights

---

[1] A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gaudreault v. Mun. of Salem,* 923 F.2d 203, 208 (1st Cir. 1990); *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). There is no dispute that Mr. Douglas' medical needs were serious.

case as follows: "We hold that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

Punitive damages are routinely permitted to proceed to a jury and routinely (though not frequently) awarded, in prisoner litigation. For example, in *Jacobs v. Pennsylvania Dept. of Corr.*, 2011 WL 2295095, *26-*29 (W.D.Pa. 2011), District Judge (now Chief Judge) Joy Flowers Conti of the Western District of Pennsylvania upheld a substantial jury award of punitive damages in favor of the prisoner-plaintiff against DOC officials. Chief Judge Conti held that the "ratio between the awards for compensatory and nominal damages and the award for punitive damages, considered in the aggregate . . . is less than one-to-two and is not excessive. This ratio is clearly less than a double-digit ratio. The awards against the individual defendants . . . are not excessive, particularly in this case, where Jacobs is precluded by law from recovering damages for mental or emotional harm due to his status as a prisoner. Therefore, the court will not strike or remit the awards for punitive damages." *Id*. at *29. Mr. Jacobs "status as a prisoner" was no impediment to his eligibility for an award of punitive damages.

In order "to qualify for a punitive damages award, 'the defendant's conduct must be, at a minimum, reckless or callous. Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard.'" *Consonery v. Pelzer,* 2013 WL 593982, *7 (W.D.Pa. 2013) (allowing claim for punitive damages against most defendants to proceed to the jury in prisoner litigation claiming deliberate indifference to medical needs) (quoting *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989). In the context of a "deliberate indifference" *Estelle* claim, a "jury may assess punitive

damages in a civil rights action when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Walker v. Brooks,* 2009 WL 3183051, *9 (W.D.Pa. 2009) (allowing punitive damages claim to proceed in prisoner litigation: "If Plaintiff succeeds in proving his claim of deliberate indifference, which has been adequately alleged, then he may be entitled to recover punitive damages based on Defendants' 'reckless or callous indifference to his federally protected rights.'") (quoting *Alexander v. Riga*, 208 F.3d 419, 430–31 (3d Cir. 2000)).

For section 1983 purposes, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994). "Under the law of this Circuit," punitive damages may be awarded in civil rights action under 42 U.S.C. § 1983 "'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.' Because the Court concludes that [prisoner] Bermudez has stated facts which, if proven, could demonstrate that the Defendants were deliberately indifferent to his serious medical needs, it follows logically that 'reckless or callous indifference' has been noticed. Hence, there is a proper basis for a request for punitive damages." *Bermudez v. City of Philadelphia*, 2007 WL 1816469, *3 (E.D.Pa. 2007) (footnote omitted).

This Court is quite familiar with the claim and the defense in this case, has already considered Dr. Jin's motion for summary judgment and his motion for reconsideration, and has found that Plaintiff has adduced sufficient evidence to allow his deliberate indifference claim to go to the jury. Because deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk, which can sustain an award of punitive

damages, the Court rejects defendant's attempt to preclude the jury from considering punitive damages.

Dr. Jin also argues that the PLRA, 18 U.S.C. § 3626(a)(1)(A), precludes an award of punitive damages in prisoner civil rights litigation. Section 3626, in part, prohibits awards of prospective relief not necessary to correct a violation of federal rights with respect to prison conditions. Punitive damages is a form of prospective relief, according to Dr. Jin, because the PLRA defines "prospective relief" as "all relief other than compensatory monetary damages." 18 U.S.C. § 3626(g)(7). In support of the latter proposition, defendant relies upon a pair of 2008 decisions by colleagues in the Western District of Pennsylvania: *Margo v. Bedford County,* 2008 WL 857507 (W.D.Pa. 2008) (Gibson, D.J., adopting Report and Recommendation by Pesto, M.J.), and *Mitchell v. McDonell*, 2008 WL 5429704 (W.D.Pa. 2008) (same). With all due respect, this Court declines to follow *Margo* and *Mitchell*.

That Court's interpretation of the above referenced provisions of the PLRA is, in its entirety, as follows:

> Plaintiff's ability to obtain punitive damages in the other deliberate indifference claims is foreclosed by the provision of the Prison Litigation Reform Act codified at 18 U.S.C. § 3626(a)(1)(A), which prohibits the award, in any action with respect to prison condition, of any prospective relief which is not "necessary to correct a violation" of federal rights. "Prospective relief" is defined in 18 U.S.C. § 3626(g)(7) to be all relief other than compensatory damages. Since by definition punitive damages are not compensatory damages nor damages which "correct a violation" of a plaintiff's rights, but rather are punishment for a defendant's wrongdoing, they should be unavailable.

*Margo*, 2008 WL 857507 at *10. *See also Mitchell*, 2008 WL 5429704 at *2 (same).

This Court believes that the *Margo-Mitchell* interpretation of the statutory definition of "prospective relief" fails to consider the entire text and purpose of section 3626, as a *whole*. Section 3626 is entitled "Appropriate remedies with respect to prison conditions," provides:

5

> Prospective relief. -- (A) Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1).

This subsection, and all of the rest of this provision, set out the parameters and limitations on the Court's ability to issue injunctions to remedy prison conditions and other equitable relief such as release of a prisoner. 18 U.S.C. § 3626(a)(2), (a)(3). Only in the definitions section is any mention made of monetary damages, when it defines prospective relief as "all relief other than compensatory monetary damages." 18 U.S.C. § 3626(g)(7).

Initially, it is far from certain that recompense for past violations of the Eight Amendment for deliberate indifference to serious medical needs is tantamount to remedial measures to remedy "prison conditions" for purposes of section 3626. Punitive damages are distinct from compensatory damages, as *Margo* and *Mitchell* observe, but on the other hand, it is quite a stretch to consider punitive damages to be of like quality and nature as the other forms of injunctive and equitable remedial relief related to prison conditions described and proscribed in section 3626 of the PLRA. This is not the purpose of the prospective relief which is the subject of section 3626.

Without more specific guidance from Congress or by the Court of Appeals for the Third Circuit, this Court cannot agree that section 3626(g)(7) was intended to preclude an award of punitive damages in all prisoner litigation. It is far more likely that Congress simply did not consider punitive damages when it enacted section 3626, and that if it intended to abolish

6

punitive damages in all prisoner litigation under the PLRA, it would have done so directly, and in much plainer terms.

Moreover, such a construction disregards the long standing recognition that punitive damages are available against individuals in civil rights litigation pursuant to 42 U.S.C. § 1983, *including* prisoner claims of deliberate indifference to medical needs, as the authority referenced above amply demonstrates. Thus, it is no surprise that the Model Civil Jury Instructions of the Court of Appeals for the Third Circuit for Civil Rights Claims Under Section 1983, Chapter 4, include instructions on awarding of punitive damages in all such cases, section 4.8.3, but do not carve out an exception for prisoner cases, although the PLRA was enacted well before the Model Civil Jury Instructions were adopted. As stated in the Comments to section 4.8.3, Punitive Damages, the "purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." (Quoting *Memphis Comm. School Dist. v. Stachura*, 477 U.S. 299, 306 n.9 (1986)). This recognition of the purpose of punitive damages does not sound like it serves the same purpose as prospective equitable relief to remedy prison conditions as provided in section 3626. *See also In re Bayside Prison Litig.,* 341 F.App'x. 790, 797 (3d Cir. 2009) (prisoner-plaintiff "introduced evidence sufficient for a reasonable jury to conclude that [defendants] who were aware, but chose to disregard, reports of inmate abuse, acted with deliberate indifference to plaintiff's constitutional rights. *See Farmer,* 511 U.S. at 836, 114 S.Ct. 1970 ('[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'). . . . Accordingly, the imposition of punitive damages was not improper.").

Accordingly, the Court finds that section 3626 does not apply and does not prohibit consideration of punitive damages, and defendant's motion in limine to preclude jury consideration of punitive damages is DENIED.

**Motion in Limine regarding Dr. Eller (ECF No. 137)**

The Court has carefully considered Dr. Eller's report, the evidence of record regarding Dr. Eller's diagnosis and treatment of Plaintiff's condition, the proffer made as to his testimony, and the arguments of counsel. Defendant asserts that Dr. Eller's report and expert opinion goes only to conduct and inaction on the part of DOC employees, not Dr. Jin who is not named in the report, and that Dr. Eller's findings are not reliable because they express no opinion on the REA appointments and treatment for various eye care issues, or even indicate that he knew of and reviewed REA's treatment records.

The Court finds defendant mischaracterizes Dr. Eller's report and opinion, and misconstrues Plaintiff's theory of deliberate indifference. Dr. Jin's objections go to the weight of Dr. Eller's report and expert opinion, not their admissibility, and he is free to argue his points to the jury in attempting to discredit Dr. Eller's opinion. The motion in limine regarding Dr. Eller is therefore DENIED.

**Motion in Limine to Preclude Hearsay, Speculation and Irrelevant Evidence (ECF No. 139)**

Defendant's final motion in limine seeks to exclude certain specific items or categories of evidence, for a variety of reasons. In his Response, Plaintiff agrees that certain items are not relevant and states he has no intention on introducing evidence on these topics. Therefore the Court will grant defendant's motion in limine to exclude the following items: evidence of other lawsuits against Dr. Jin; evidence about Mr. Douglas' Single Cell or Z Code status prior to

September 11, 2009; and evidence about other allegations in Plaintiff's initial and amended complaints that have been abandoned, with one exception.

Regarding Plaintiff's transfer to a facility in Michigan in February 2010, which was abandoned as a distinct constitutional injury or claim, the transfer was made within the time frame during which Plaintiff was under Dr. Eller's instructions to return for follow-up treatment - removal of the silicone oil. The transfer may have contributed to the delay in necessary treatment. Moreover, Dr. Jin was involved in the decision making on whether prisoner candidates for transfer met the established medical criteria and protocols for transferring SCI Greene's inmates to Michigan. This process would have included review of inmates' medical histories and records. Despite having actual knowledge that Plaintiff needed to return to UPMC for removal of the silicon oil from Mr. Douglas's eye, Dr. Jin authorized the transfer, and failed to inform the Michigan facility of Mr. Douglas's condition and need for follow up care.

Evidence regarding the transfer to the Michigan facility is obviously relevant and probative on both the objective and subjective components of Mr. Douglas' deliberate indifference claim. Thus, Dr. Jin's motion to exclude evidence about that transfer will be denied.

The Court also will deny defendant's motion to exclude evidence regarding patient conference/management meetings because he did not keep the minutes of those meetings and he had no input into what was written. The minutes and other evidence about the meetings are clearly relevant to the issues at hand because they go to notice and Dr. Jin's knowledge of Plaintiff's medical condition and treatment. The fact that Dr. Jin was not the scrivener of the minutes or did not have input into the minute entries provide ammunition for cross examination, but not to challenge their admissibility. *See Thomas v. Dragovich*, 142 F.App'x 33 (3d Cir. 2005)

(reversing district court's exclusion of plaintiff prisoner's prior grievances as irrelevant and self-serving, although error was harmless under circumstances).[2]

Defendant's Motion in Limine to Preclude Hearsay, Speculation and Irrelevant Evidence (ECF No. 139) is GRANTED in part and DENIED in part, as set forth herein.

**Motion in Limine to Preclude the Introduction of Plaintiff Lamar Nelson Douglas' Criminal History Pursuant to Federal Rules of Evidence 401,402, and 403 (ECF No. 141)**

Plaintiff seeks to prevent defendant from eliciting any testimony or evidence about the nature of his criminal convictions and sentences pursuant to Fed.R.Evid. 401, 402 and 403. Defendant responds that he does not intend to delve into Mr. Douglas' criminal history per se, and concedes it is irrelevant, but does plan to offer evidence "that Mr. Douglas was in jail in the mid 1990's when he was first diagnosed with glaucoma in his right eye, has remained in jail since that time and is expected to remain in jail for the rest of his life." Brief in Opposition (ECF No. 150), at 2. Defendant asserts that these facts are pertinent to Mr. Douglas' damages, but does so in the most general terms, without any specifics or attempt to show how his length of incarceration is linked to the question of damages, and this Court does not glean any such connection.

---

[2] The Court of Appeals for the Third Circuit stated more fully, at 142 F.App'x 37-38 :

> Taken in combination with the fact that Thomas' contested exhibits [i.e., prior grievances] each contemporaneously memorialize either (i) his perceptions as to treatment and medication, (ii) the administrative staff's awareness and responses to those perceptions, or (iii) both, the low threshold for relevance established by Rule 401 causes us to assume in this appeal that all of Thomas' exhibits were relevant to his claim of deliberate indifference against the Defendants.
>
> The District Court also appears to have excluded the exhibits because they were "self-serving." But Thomas' proposed exhibits were contemporaneous communications that reflected the information that was available to the defendants and, in some cases, their responses to it. Because Thomas sought to introduce them to show notice to defendants, i.e., their state-of-mind, the documents were not barred as hearsay. . . . In any event, since the authenticity of the documents is not at issue, and since defendants would have had the opportunity to cross-examine Thomas on the content of the letters, the central concerns usually raised by "self-serving evidence" do not apply.

The Court agrees that Mr. Douglas' criminal history is not relevant, but disagrees with defendant that somehow, serving a life sentence, or being in jail since the 90's, is. To the extent his term of imprisonment may be marginally relevant to some issue in the case, the Court finds that the danger of undue prejudice far outweighs any such probative value, and will exclude such evidence pursuant to Fed.R.Evid. 403. Plaintiff's motion in limine to preclude evidence of Mr. Douglas' criminal history, including references to the term of imprisonment, is therefore GRANTED.

**Motion in Limine to Exclude Argument and Evidence that Defendant Had No Intent to Harm Plaintiff (ECF No. 143)**

Plaintiff moves the Court to exclude the argument and evidence that Dr. Jin had no personal malice toward Mr. Douglas and had no intent to harm Mr. Douglas. Plaintiff states that because "Deliberate Indifference is established when an inmate is denied prescribed treatment from a specialist, . . . the intent of Dr. Jin and his personal relationship with Mr. Douglas is completely irrelevant." Brief in Support (ECF No. 144), at 1. In his brief, Plaintiff expands this motion in limine to include evidence that "Dr. Jin referred Mr. Douglas to REA four times in between the medical order given on November 19, 2009 to remove the silicone oil and when the silicone oil was removed on November 15, 2010." *Id.* at 5.

The Court agrees with defendant that his state of mind is a critical component of Mr. Douglas' *deliberate* indifference claim. As stated above, the second facet of an *Estelle* deliberate indifference claim is a *subjective* determination whether the defendant acted with a sufficiently culpable state of mind, i.e., whether he was reckless or callous, or if the conduct was intentional or motivated by evil motive. Plaintiff cannot preclude Dr. Jin, who is being sued for deliberate indifference to treatment of his detached retina and to follow up care instructions, from explaining his subjective intent to the jury, which will form its own conclusion on that issue.

11

Regarding the REA appointments, Dr. Jin will rely on the treatment that he did provide for Mr. Douglas during the relevant time period, and Plaintiff will counter that those appointments and treatment, nevertheless, deliberately disregarded the treating physician's explicit instructions. The jury will sort out whether the treatment actually provided in lieu of the recommended follow up for removal of silicone oil from Mr. Douglas' eye was reasonable or amounted to deliberate indifference to his serious medical needs.

Both the REA appointments and Dr. Jin's state of mind are highly probative to the claim and defense, and Plaintiff's motion to exclude this evidence is therefore DENIED.

**Motion in Limine to Exclude the Testimony of Dr. Thomas R. Friberg (ECF No. 146)**

Plaintiff moves to exclude Dr. Thomas Friberg's expert opinion testimony because it fails to meet the standards for admissibility under Fed.R.Evid. 702. Plaintiff would exclude Dr. Friberg's expert opinion because it speaks to oranges (the reasonableness of Dr. Jin's referrals to REA for general eye treatment and treatment of glaucoma and cataracts), while his claim and Dr. Eller's expert report and opinion address apples (surgery for a detached retina and disregard of his instructions for follow up care).

Plaintiff's challenge to admissibility of Dr. Friberg's expert opinion testimony is not well founded. To paraphrase the Court's analysis of defendant's motion to exclude Dr. Eller's report and opinion, the Court finds Plaintiff mischaracterizes Dr. Friberg and opinion, and misconstrues Dr. Jin's defense. Plaintiff's objections go to the weight of Dr. Friberg's report and expert opinion, not their admissibility, and he is free to argue his points to the jury in attempting to discredit Dr. Friberg's opinion. The motion in limine regarding Dr. Friberg is therefore DENIED.

IT IS SO ORDERED this 20th day of March, 2014.

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all counsel of record