IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAMAR NELSON DOUGLAS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | Civil Action No. 11-0350 |
| | ) | United States Magistrate Judge |
| DR. BYUNGHAK JIN, | ) | Cynthia Reed Eddy |
| Medical Director, SCI | ) | |
| GREENE, | ) | |
|     Defendant. | ) | |

## MEMORANDUM ORDER ON
## MOTIONS IN LIMINE

Plaintiff, Lamar Nelson Douglas, is a Pennsylvania inmate housed at the State Correctional Institution at Greene, located in Waynesburg, Pennsylvania. He commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, against a number of Pennsylvania Department of Corrections officials and medical care providers at SCI-Greene, including a claim against its Medical Director, Dr. Byunghak Jin, the sole remaining defendant, for deliberate indifference to his medical needs in violation of the Eighth Amendment.

Before the Court are Dr. Jin's Motion in Limine Regarding Mitigation (ECF No. 172) and Plaintiff's Motion in Limine to Allow REA's Records Into Evidence Under Federal Rule of Evidence 803(6) or Alternatively, Through Dr. Friberg or Dr. Jin (ECF No. 174). The factual background and legal framework for evaluating these motions have been set forth in previous Opinions and Orders of this Court, and need not be repeated herein. *See* (ECF Nos. 115, 126 and 163).

**Motion in Limine Regarding Mitigation (ECF No. 172)**

Defendant "seeks to elicit testimony as to the opportunities available to plaintiff at SCI Greene to raise questions or inquiries about his medical care and that his failure to pursue those

1

opportunities should be considered by the jury as a failure to mitigate damages." Motion in Limine Regarding Mitigation (ECF No. 172), at 1. The witness who would render such testimony, Deputy Superintendant Lorinda Winfield, is:

> the deputy superintendent at SCI Greene who is familiar with the grievance [process] utilized at SCI Greene and also familiar with the timeline and protocol to be utilized by the Department of Corrections and any vendors relating to the transfer of inmates from SCI Greene to the Michigan Correctional System in late 2009/early to mid-2010. Depending on the outcome of discovery designations and motions in limine, she will describe the grievance process available to inmates, what was used by Mr. Douglas and also describe the selection criteria for transfers to Michigan and the expectation as to what inmates would be stricken from the selection list.

Dr. Jin's Final Witness List and Offers of Proof (ECF No. 130), at 2-3.

Previously, this Court rejected Dr. Jin's argument for summary judgment that Mr. Douglas' claims are foreclosed because he failed to exhaust his administrative remedies via the DOC's inmate grievance procedures. In a Memorandum Opinion in Support of Denial of Motions for Summary Judgment dated January 27, 2014 (ECF No. 115), this Court reviewed several grievances made part of the summary judgment record, and held: Dr. Jin's "argument that Plaintiff failed to properly exhaust his administrative remedies because his grievances were not specific enough to encompass the deliberate indifferent claims raised in this lawsuit is without merit. . . . The Court finds the pro se prisoner's detailed grievances complaining about delay and denial of treatment in his right eye adequate to have preserved the deliberate indifference claim which is now before this Court." *Id*. at 12-13.

On March 3, 2014, the Court issued a Memorandum Opinion and Order Denying Defendant's Motion For Reconsideration (ECF No. 126), which vigorously pressed the Court to reconsider the exhaustion argument. The Court did so, but found that Mr. Douglas' compliance with the DOC's grievance procedure was substantial, and that exhaustion is a threshold issue for

the Court, not the jury. In denying Dr. Jin's motion for reconsideration (ECF No. 116), this Court explained:

> In light of defendant's motion for reconsideration, it is appropriate to flesh out these Grievances. It is also appropriate to discuss several additional grievances which, although not fully grieved through all three steps, provide context for his subsequent grievances and *inform the Court's judgment that Plaintiff was complaining about the pain and discomfort in his eyes and Dr. Jin's delays and deliberate indifference with regard to his vision and eyesight since April 2009.*
>
> \* \* \*
>
> [Individual grievances] should not be viewed in a vacuum, but rather, as *part of a continuing series of grievances where [Plaintiff] complained about Dr. Jin's continued delays and indifference to his medical eye care needs, pain and visual impairments, as evaluated by outside medical professionals.* Some of Plaintiff's grievances were filed before and shortly after his UPMC procedure in September 2009.
>
> . . . Mr. Douglas' civil rights claim and his grievances are about a "larger-scale denial of adequate medical care." Under all of the circumstances, the Court quite agrees with Plaintiff's assessment of the nature of Mr. Douglas' constitutional claim for deliberate indifference with regard to Dr. Jin's care and treatment of his eyes and vision and the administrative grievances he filed with regard thereto.
>
> Plaintiff's medical condition was a continuing issue, not one that occurred on a specific date, and the emulsification of silicone oil was a gradual process. Dr. Jin's failure to follow Dr. Eller's explicit after care instructions was also of a continuing nature. Furthermore, Mr. Douglas, a layman, did not have the education or training to be able to pinpoint the exact cause of his pain and deteriorating vision or accurately diagnose its etiology. *Mr. Douglas made repeated complaints to prison medical staff and officials, both before and after September 2009, about his pain, deteriorating vision, and the delay and indifference to his treating UPMC physician's recommendations for necessary follow up care.* Given Mr. Douglas' lack of expertise, *his compliance with the DOC grievance procedures was substantial and certainly adequate to have exhausted his administrative remedies* within the letter and spirit of the Prison Litigation Reform Act.

Memorandum Opinion And Order Denying Defendant's Motion For Reconsideration (ECF No. 126), at 5-7, 9 (emphasis added).

Dr. Jin now proffers that Deputy Superintendent Winfield will "testify as to the overall grievance procedure available to inmates as well as other opportunities for inmates to confer with staff members . . . if there are issues and/or concerns that need to be addressed. The anticipated testimony will be mostly general in nature ending with confirmation that while plaintiff utilized some of those opportunities . . . he did not raise the timing of the silicone oil or follow up with Dr. Eller between November 2009 and November 2010 thereby failing to mitigate his damages as required." Brief in Support of Motion in Limine (ECF No. 173), at 1. Mr. Douglas counters that "mitigation of damages is not a proper issue in this case, and that Defendant's effort to inject this issue into the case amounts to an effort to circumvent the Court's repeated rulings regarding exhaustion of administrative remedies." Brief in Opposition to Motion in Limine Regarding Mitigation of Damages (ECF No. 180), at 1. The Court agrees with Plaintiff in large part.

Failure to exhaust is a threshold question for the Court, not the jury. *Small v. Camden County,* 728 F.3d 265, 269-70 (3d Cir. 2013). The Court will not permit defendant to introduce evidence through the back door that he could not introduce through the front. Such evidence has the potential of unduly prejudicing Mr. Douglas' case with matters not probative of the issue whether Dr. Jin was deliberately indifferent to Mr. Douglas' condition, and would confuse the jury with matters that are not for it to decide but the Court. Fed.R.Evid. 403. Thus, to the extent that Deputy Superintendant Winfield is offered to testify about "the overall grievance procedure available to inmates as well as other opportunities for inmates to confer with staff members," the Court finds such testimony would tack too close to the exhaustion issue, and would violate this Court's previous rulings.

On the other hand, mitigation of damages may be appropriate for a jury to consider in a section 1983 case, although applicability of the mitigation of damages concept in prisoner civil

rights suits is rare. *See Reeves v. Wallington*, 2008 WL 5060400, *5 (E.D. Mich. 2008) ("circumstances where the defense of failure to mitigate damages applies to a prisoner's claim of deliberate indifference, while rare, do exist.") (citing *Benter v. Peck*, 825 F.Supp. 1411, 1421 (S.D.Iowa 1993) (refusal to provide plaintiff with replacement glasses where he was legally blind and unable to function deprived treatment for a serious medical need in violation of his constitutional rights, entitling plaintiff to injunctive relief. But because plaintiff "could have easily paid for the glasses and mitigated his ongoing difficulties, the court finds that an award of nominal damages is sufficient."); *Suarez v. Mattingly*, 212 F.Supp.2d 350, 352 (D.N.J. 2002) (court permitted argument and evidence concerning plaintiff's conduct pertaining to medical compliance with instructions as implicating the issue of mitigation of damages).

The parties have submitted a joint instruction on mitigation, within the instruction on compensatory damages, which closely tracks the Model Civil Jury Instructions for the Court of Appeals for the Third Circuit, to-wit:

> A plaintiff has a duty under the law to "mitigate" his damages – that means that the plaintiff must take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage caused by the defendant. It is Dr. Jin's burden to prove that Mr. Douglas has failed to mitigate. So if Dr. Jin persuades you by a preponderance of the evidence that Mr. Douglas failed to take advantage of an opportunity that was reasonably available to him, then you must reduce the amount of Mr. Douglas' damages by the amount that could have been reasonably obtained if he had taken advantage of such an opportunity. [Third Circuit Model Jury Instructions § 4.8.1 (2010).]

Jointly Proposed Jury Instructions (ECF No. 165), at 24.

Because the parties have agreed to this instruction, and because the Model Civil Jury Instructions do not carve out an exception to the mitigation of damages instruction in prisoner deliberate indifference cases, the Court will not prohibit Deputy Superintendant Winfield from testifying about particular instances wherein Plaintiff allegedly had a reasonable opportunity to

mitigate his damages and did not. The Court cautions defendant, however, to make every effort to maintain the boundary between legitimate mitigation testimony and improper testimony about DOC's grievance procedures or prisoners' obligation to exhaust administrative remedies in order to advance civil rights claims in federal court. And, of course, Plaintiff will be able to testify and cross-examine the Deputy Superintendant about any grievances which were "part of a continuing series of grievances" both before and after September 2009, where Mr. Douglas "complained about Dr. Jin's continued delays and indifference to his medical eye care needs, pain and visual impairments, as evaluated by outside medical professionals. . . and about his pain, deteriorating vision, and the delay and indifference to his treating UPMC physician's recommendations for necessary follow up care . . . ," grievances this Court found adequate to fulfill his obligation to exhaust his administrative remedies with regard to his deliberate indifference claim.

Accordingly, the Court HEREBY GRANTS in part and DENIES in part Defendant Jin's Motion In Limine Regarding Mitigation.

**Motion In Limine To Allow REA's Medical Records Into Evidence Under Federal Rule Of Evidence 803(6) Or, Alternatively, Through Dr. Friberg Or Dr. Jin (ECF No. 174)**

This motion in limine seeks the Court's imprimatur on introduction of certain medical records generated by REA in its treatment of Mr. Douglas under Federal Rule of Evidence 803(6), the Records of Regularly Conducted Activity exception to hearsay. Under Federal Rule of Evidence 803(6), a record of an act, event, condition, opinion, or diagnosis is admissible if: (A) the record was made at or near the time by, or from information transmitted by, someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another

qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute ermitting certification; and (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness. Fed.R.Evid. 803(6). Plaintiff asserts that "the REA medical records were made at or near the time of the event recorded (Mr. Douglas' medical examinations), by a person with personal knowledge of that event (Dr. Mayle), and kept in the regular course of business." Brief in Support of Motion in Limine Regarding REA Medical Records (ECF No. 175), at 4.

Defendant argues that the REA medical records (or record set forth at Plaintiff's Exhibit 12) is not self-authenticating, which is correct, but Plaintiff acknowledges this and explains it will be authenticated though a proper custodian,[1] stipulation or a Rule 902(11) certification.

Defendant also objects that no proper foundation is apparent for introduction of these records because they were not sent to Dr. Jin or placed in DOC's medical files, and Dr. Eller did not review them in making his diagnosis or rendering an opinion. This argument goes to the weight of the evidence, which may be argued to the jury, but under the circumstances of this case, the relevance and foundation are apparent, and the evidence will be admitted.

Accordingly, Plaintiff's motion in limine (ECF No. 174) is GRANTED.

IT IS SO ORDERED this 6th day of May, 2014.

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all counsel of record

---

[1] Although Dr. Jin asserts that Plaintiff has not "identified any witness from REA," Brief in Opposition (ECF No. 175), at 2, Plaintiff in fact lists "Records custodian, Regional Eye Associates" as a potential witness. Plaintiff's Pretrial Statement (ECF No. 127), at 3.

7